UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

ALEXIS S. MURRAY-MEDOUZE

                                  Plaintiff,

                 -against-

THE CITY OF NEW YORK; JOHN DOE No.: 1, as
Duty Captain; "JANE" ROE, as Executive Officer, 73rd
Precinct; JOHN DOE No.: 2, as Lieutenant, 73rd Precinct;
JOHN DOE No.: 3, as Desk Officer, 73rd Precinct; JOHN
DOE No.: 4, as Sergeant, Patrol Supervisor, 73rd Precinct;
"JOHN" GRILLO, as Sergeant, 73rd Precinct; RAFAEL
FIGUEROA, as Police Officer, 73rd Precinct; "JANE"
KAHVECCI, as Police Officer, 73rd Precinct; and "JANE"
MARTIN, as Police Officer, 73rd Precinct, each being
sued individually and in their official capacities as
employees of defendant THE CITY OF NEW YORK

                                 Defendants'

------------------------------------------------------------------x

**Complaint**

**Jury Trial Demand**

**CV 13      6165**

**TOWNES, J.**

**LEVY, M.J.**

The plaintiff ALEXIS S. MURRAY-MEDOUZE by her attorney The Sanders Firm, P.C.,

as and for her complaint against defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1;

"JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO;

RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN, respectfully set forth and

allege that:

## INTRODUCTION

This is an action for equitable relief and money damages on behalf of the plaintiff ALEXIS

S. MURRAY-MEDOUZE, (hereinafter referred to as "plaintiff") who was and is being deprived of

her statutory rights as an employee as a result of defendants' THE CITY OF NEW YORK; JOHN

DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4;

"JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN'S

discriminatory conduct.

## JURISDICTION AND VENUE

1.    The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

        a.    the Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in his civil rights and the redress of deprivation of rights under color of law.

2.    The unlawful employment practices, violations of plaintiff's civil rights complained of herein were committed within the Eastern and Southern Districts of New York.

3.    The pendent jurisdiction of the federal district court is invoked with respect to the plaintiff's claims under New York State Executive Law § 296 and New York City Administrative Code § 8-107, pursuant to 28 U.S.C. 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

## PROCEDURAL REQUIREMENTS

4.    Plaintiff has filed suit with this Court within the applicable statute of limitations period.

5.    Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

## PLAINTIFF

6.    Plaintiff ALEXIS S. MURRAY-MEDOUZE is a female citizen over twenty-one (21) years of age and a resident of Kings County.

7.    Plaintiff's is an employee of defendant THE CITY OF NEW YORK (hereinafter

referred to as the "CITY") more specifically the Police Department City of New York (hereinafter referred to as the "NYPD").

## DEFENDANTS'

8.      Defendant CITY was and is a municipal corporation organized and existing under and by virtue of the law of the State of New York, and at all relevant times plaintiff's employer, with its central offices in the county of New York, and diverse other offices and facilities throughout the world.

9.      Defendants' JOHN DOE No.: 1, as Duty Captain; "JANE" ROE, as Executive Officer, 73rd Precinct; JOHN DOE No.: 2, as Lieutenant, 73rd Precinct; JOHN DOE No.: 3, as Desk Officer, 73rd Precinct; JOHN DOE No.: 4, as Sergeant, Patrol Supervisor, 73rd Precinct; "JOHN" GRILLO, as Sergeant, 73rd Precinct; RAFAEL FIGUEROA, as Police Officer, 73rd Precinct; "JANE" KAHVECCI, as Police Officer, 73rd Precinct; and "JANE" MARTIN, as Police Officer, 73rd Precinct, each being sued individually and in their official capacities as employees of defendant THE CITY OF NEW YORK.

## BACKGROUND

10.      Plaintiff is a female employee of the NYPD.

11.      Plaintiff self identifies as African-American or Black.

12.      Plaintiff alleges that since 1973, the Department has specifically addressed "Confrontation Situations" in its training modules and policies.

13.      Plaintiff alleges that on or about June 8, 2008, Assistant Chief George Anderson eliminated training time for "Confrontation Situations."

14.     Plaintiff alleges that on or about May 28, 2009, not even one year later, now deceased off-duty Detective Omar Edwards (African-American Male) was shot and killed by an on-duty Caucasian Male police officer under the mistaken belief that he was a criminal.

15.     Plaintiff alleges that immediately after that incident, Police Commissioner Raymond W. Kelly promised to enhance "Confrontation Situations" training.

16.     Plaintiff alleges that since then, not much has changed with respect to "Confrontation Situations" training.

17.     Plaintiff alleges that the Police Commissioner Raymond W. Kelly has consistently rejected calls to reform the training module despite recommendations by respected law enforcement experts.

18.     Plaintiff alleges that "Confrontation Situations" is one of the most important training modules in the police department.

19.     Plaintiff alleges that "Confrontation Situations" is one of the most often changed police policies because of the nature of the inherent racial bias problem.

20.     Plaintiff alleges that "Confrontation Situations" are evaluated in the context of racial bias.

21.     Plaintiff alleges that in "Confrontation Situations" the policy directs that a report to be sent to the Office of Equal Employment Opportunity to be evaluated in the context of racial bias.

22.     Plaintiff alleges that majority of time if there are injuries and/or deaths during such "Confrontation Situations" minority police officers statistically outweigh any other racial category despite their smaller numbers.

23.     Plaintiff alleges that "Confrontation Situations" usually involves the challenging officer, usually on-duty either in uniform or in plainclothes.

24.     Plaintiff alleges that the challenging officer is required to use sound tactics and judgment when approaching the situation.

25.     Plaintiff alleges that the challenged officer, usually a minority police officer off-duty or on-duty in in plainclothes.

26.     Plaintiff alleges that the challenged officer must obey all commands of the challenging officer and clearly identify his or herself.

27.     Plaintiff alleges that the Department is aware of this serious problem.

28.     Plaintiff alleges that on or about December 3, 2009, Deputy Commissioner of Training Wilbur Chapman testified before the Governor's Task Force on Police Shootings.

29.     Plaintiff alleges that Deputy Commissioner Wilbur Chapman acknowledged that since the 1930s ten police officers have lost their lives in incidents involving mistaken identity.

30.     Plaintiff alleges that the Department hired an outside expert to study how training may reduce the influence of racial bias on behavior.

31.     Plaintiff alleges that the Department hired Dr. Joshua Corell, Associate Professor from the University of Chicago to evaluate racial bias in "Confrontation Situations."

32.     Plaintiff alleges that the Department consulted with representatives of the various police fraternal organizations in an effort to reduce "Confrontation Situations."

33.     Plaintiff alleges that there are NO consequences for violating this policy.

34.     Plaintiff alleges that is why this problem persists.

35.     Plaintiff alleges that she received substantial injuries as the challenged officer in a "Confrontation Situation" despite identifying herself to the challenging officers.

36.     Plaintiff alleges that racial bias and stereotyping was the driving force that dictated the outcome of this "Confrontation Situation."

37.     Plaintiff alleges that on or about January 11, 2012, she was seated inside of her personal vehicle along with her passenger Dianna Jeffrey (Female Black) legally parked at the curb line in front of 2228 Strauss Street, Brooklyn. N.Y.

38.     Plaintiff alleges that Tanya Thomas (Female Black) and Junior Paton (Male Black) were legally parked directly behind her vehicle in a second vehicle.

39.     Plaintiff alleges that around 1935 hours, she noticed marked NYPD RMP No.: 5381 stopped alongside Ms. Thomas's vehicle.

40.     Plaintiff alleges that Ms. Thomas was seated in the driver's seat and Mr. Paton was seated in the passenger seat.

41.     Plaintiff alleges she observed three uniformed police officers, later identified as defendants' RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN inside of NYPD RMP No.: 5381.

42.     Plaintiff alleges that she heard a heated exchange between defendant "JANE" KAHVECCI who was seated in the passenger seat and Ms. Thomas.

43.     Plaintiff alleges that she did not understand why this was occurring because Ms. Thomas's vehicle was legally parked and Ms. Thomas has violated no laws.

44.     Plaintiff alleges that she observed defendant RAFAEL FIGUEROA exit the driver's side of NYPD RMP No.: 5381 and forcibly remove Mr. Paton seated in the passenger seat of Ms. Thomas's vehicle.

45.     Plaintiff alleges that she did not understand why this was occurring because Ms. Thomas's vehicle was legally parked and Mr. Paton has violated no laws.

46.     Plaintiff alleges that out of her concern for Ms. Thomas and Mr. Paton's personal safety she intervened to diffuse the situation.

47.     Plaintiff alleges that she walked towards Ms. Tomas's vehicle and verbally identified herself as a New York City Police Officer by shouting "Hey, what are you doing?  I'm on the job!"

48.     Plaintiff alleges that defendant RAFAEL FIGUEROA gestured to her to stay away.

49.     Plaintiff alleges that she shouted to Mr. Paton, "Junior, get his shield number.  He has no reason for stopping you, report him to CCRB."

50.     Plaintiff alleges that defendant RAFAEL FIGUEROA then disengaged from Mr. Paton and charged her yelling "Who is going to give me a CCRB?"

51.     Plaintiff alleges that she tried to reason with defendant RAFAEL FIGUEROA, he then pushed her.

52.     Plaintiff alleges that defendants' "JANE" KAHVECCI and "JANE" MARTIN stood idly by and did nothing to stop defendant RAFAEL FIGUEROA'S misconduct.

53.     Plaintiff alleges that defendant "JANE" KAHVECCI instead said "If you are an officer where is your ID?"

54.     Plaintiff alleges that she and defendant "JANE" KAHVECCI walked to her personal vehicle where she showed her NYPD issued police identification card to defendant her.

55.     Plaintiff alleges that once she identified herself to defendant "JANE" KAHVECCI, she remained next to her personal vehicle.

56.     Plaintiff alleges that defendant "JANE" KAHVECCI walked back towards Ms. Thomas's vehicle.

57. Plaintiff alleges that she told defendant RAFAEL FIGUEROA "I am going to report you to CCRB for pushing me."

58. Plaintiff alleges that defendant RAFAEL FIGUEROA ran towards her personal vehicle, then getting in her face yelling "I am the uniformed officer, and I am in charge."

59. Plaintiff alleges that she asked defendant RAFAEL FIGUEROA several times to call the Patrol Supervisor consistent with NYPD Patrol Guide Procedure No.: 212-33 "Confrontation Situations."

60. Plaintiff alleges that defendant RAFAEL FIGUEROA repeatedly ignored her, then, instead of calling the Patrol Supervisor on the Department Radio, he called him using his personal cellular telephone.

61. Plaintiff alleges that after defendant RAFAEL FIGUEROA completing his call, he demanded that she turn over her NYPD issued police identification card to him.

62. Plaintiff refused defendant RAFAEL FIGUEROA'S request.

63. Plaintiff alleges that defendant RAFAEL FIGUEROA'S request was inappropriate and in direct conflict with Department policy.

64. Plaintiff decided to sit in her personal vehicle to further diffuse the situation and await the arrival of the Patrol Supervisor.

65. Plaintiff alleges that she began walking towards her personal vehicle, defendant RAFAEL FIGUEROA threatened to 'arrest her' if she goes to sit inside of her personal vehicle.

66. Plaintiff alleges that she told Mr. Paton to go and sit inside of Ms. Thomas's personal vehicle to further diffuse the situation and await the arrival of the Patrol Supervisor.

67. Plaintiff alleges that when she began to sit inside of her personal vehicle, defendant RAFAEL FIGUEROA violently grabbed her by the right arm and threw her down

onto the pavement.

68.     Plaintiff alleges that she sustained contusions, substantial pain to her face and about her body.

69.     Plaintiff alleges that defendant RAFAEL FIGUEROA rear cuffed her and searched her.

70.     Plaintiff alleges that when defendant RAFEAL FIGUEROA took these actions, she violated no laws.

71.     Plaintiff alleges that defendants' "JANE" KAHVECCI and "JANE" MARTIN stood idly by and did nothing to stop defendant RAFAEL FIGUEROA'S misconduct.

72.     Plaintiff alleges that in the meantime, numerous uniformed police officers arrived including two male supervisors, defendants' JOHN DOE No.: 2 and JOHN DOE No.: 4 who instructed defendant RAFAEL FIGUEROA to place her into NYPD RMP No.: 5381.

73.     Plaintiff alleges that while she was seated inside of NYPD RMP No.: 5381, defendant RAFAEL FIGUEROA searched her again.

74.     Plaintiff alleges that defendant RAFAEL FIGUEROA then searched her personal vehicle.

75.     Plaintiff alleges that defendants' JOHN DOE No.: 2; JOHN DOE No.: 4; "JANE" KAHVECCI and "JANE" MARTIN stood idly by while defendant RAFAEL FIGUEROA searched her in violation of  Department policy and her civil rights as an employee and a citizen as she has violated no laws.

76.     Plaintiff alleges that while she was seated rear cuffed inside of NYPD RMP No.: 5381, she told defendant "JANE" MARTIN that she needed medical attention because of the contusions, substantial pain to her face and about her body.

77.   Plaintiff alleges that defendant "JANE" MARTIN told her that an ambulance will respond to the stationhouse.

78.   Plaintiff alleges that shortly thereafter, she was transported to the 73rd Precinct by defendants' RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN in NYPD RMP No.: 5381.

79.   Plaintiff alleges that during the ride to the 73rd Precinct, defendant RAFAEL FIGUEROA told her that the Department made a mistake giving her a Shield and Gun.

80.   Plaintiff alleges that upon arrival, she was brought inside of the 73rd Precinct and presented to defendant JOHN DOE No.: 3.

81.   Plaintiff was searched in front of defendant JOHN DOE No.: 3 by defendant "JANE" KAHVECCI.

82.   Plaintiff then told defendant JOHN DOE No.: 3 that she needed medical attention instead she was placed rear cuffed and placed into the Holding Pens where arrests are processed.

83.   Plaintiff alleges that shortly thereafter, one of the PBA delegates' demanded that she be released and removed from the Holding Pen.

84.   Plaintiff alleges that shortly thereafter, she was placed rear cuffed inside one of the offices.

85.   Plaintiff alleges that she was being guarded by defendant JOHN GRILLO.

86.   Plaintiff alleges that while defendant JOHN GRILLO was guarding her, she overheard him telling other officers' that "This is the North not the South and when people fail to comply we slam bodies into the ground and faces into walls."

87.   Plaintiff alleges that defendant JOHN GRILLO further stated "When you fail to ID yourself it's guilty 20 days and fail to comply it's guilty 15 days."

88.     Plaintiff alleges that shortly thereafter, an unidentified Caucasian Male Sergeant offered her some water to drink.

89.     Plaintiff alleges that defendant JOHN GRILLO motioned to defendant JOHN NO.: 4 not to give her any water, so he did not.

90.     Plaintiff alleges that sometime later, an ambulance crew arrived to treat her injuries.

91.     Plaintiff alleges that defendant "JANE" ROE told the ambulance that there is an 'investigation' being conducted and she could not go to the hospital.

92.     Plaintiff alleges that she was offered an icepack for her face but was impossible to use because she was still rear cuffed.

93.     Plaintiff alleges that sometime later, the pain worsened.

94.     Plaintiff alleges that sometime later, PBA Delegate Police Officer Richard Taveras, 76th Precinct, arrived and demanded that she receive medical attention and be un-cuffed.

95.     Plaintiff alleges that eventually she was un-cuffed but denied medical attention by defendant "JANE" ROE.

96.     Plaintiff alleges defendant "JANE" ROE claimed that her injuries were not life threatening; therefore, so she can go on her own after he completes his investigation.

97.     Plaintiff alleges that the ambulance crew gave her another icepack to apply to her face.

98.     Plaintiff alleges that PBA Delegate Police Officer Richard Taveras was able to get her some pain medication from another employee.

99.     Plaintiff alleges that when she had to use the bathroom, she was escorted by

another unknown female officer.

100.    Plaintiff alleges that approximately seven hours later, on or about January 12, 2013, defendant "JANE" ROE told her that she could now go the Emergency Room but, must return to the 73rd Precinct after she receives medical treatment.

101.    Plaintiff declined telling defendant "JANE" ROE that she just wants to leave.

102.    Plaintiff alleges that approximately four hours later, defendant JONH DOE No.: 1told her that "PO Figueroa is still learning and he will speak to him."

103.    Plaintiff alleges that defendant JOHN DOE No.: 1 told her that he will not be suspending her or changing her duty status.

104.    Plaintiff alleges that defendant JOHN DOE No.: 1 returned her NYPD police identification card, she was then released.

105.    Plaintiff alleges that she experienced substantial pain about her face, back, right knee and body.

106.    Plaintiff alleges that shortly thereafter, she suffered severe emotional distress distrusting other police officers.

107.    Plaintiff alleges that between January 12, 2013 and March 2, 2013, she sought assistance from the Police Organization Providing Peer Assistance (POPPA) but, they refused because she was involved in a controversy.

108.    Plaintiff alleges that between January 12, 2013 and March 2, 2013, she sought medical treatment at Long Island College Hospital for substantial pain including her right knee.

109.    Plaintiff alleges that she was diagnosed as sustaining a "sprained knee" from the assault.

110.    Plaintiff alleges that between January 12, 2013 and March 2, 2013, she sought

assistance from the NYPD Early Intervention Unit.

111.   Plaintiff alleges that based upon a conversation, she was immediately placed on "Restricted Duty" and her firearms removed.

112.   Plaintiff alleges that she immediately began receiving psychological treatment from an outside provider she was required to see a Department Psychologist as well.

113.   Plaintiff alleges that in May 2012 she made an appointment with her primary care physician to examine her right knee.

114.   Plaintiff alleges that after receiving pain killers and physical therapy, her primary care physician scheduled her for an MRI of her right knee.

115.   Plaintiff alleges that later than month, she was told that her right meniscus was torn.

116.   Plaintiff alleges that she immediately began physical therapy.

117.   Plaintiff alleges that the physical therapy did not treat the injury.

118.   Plaintiff alleges that she was advised her only option was surgery to repair the right meniscus.

119.   Plaintiff alleges that between January 12, 2012 and June 2013 she received psychological treatment related to the "use of force" against her by defendant RAFAEL FIGUEROA as well as the treatment by defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; "JANE" KAHVECCI and "JANE" MARTIN.

120.   Plaintiff alleges that in June 2013, she was restored back to "Full Duty."

121.   Plaintiff alleges that although she was "Full Duty" she remained apprehensive interacting with other police officers.

122.    Plaintiff alleges that although she was "Full Duty" her right knee remained unstable.

123.    Plaintiff alleges that in September 2013 she was placed on "Limited Duty" because her right knee remained unstable.

124.    Plaintiff alleges that in January 2014, she is scheduled to have her right knee surgically repaired.

125.    Plaintiff alleges that based on the foregoing, defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN'S discriminatory conduct her civil rights were violated due to her race.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### RACE DISCRIMINATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

126.    Plaintiff re-alleges Paragraphs 1 through 125 and incorporates them by reference as Paragraphs 1 through 125 of Count I of this complaint.

127.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, personally interfered with and deprived her of her constitutional rights.

128.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acting individually and in their official capacities as a public officials of defendant CITY under color of law, and having been fully advised that

she was being deprived of her constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against her, or knowing such discrimination was taking place, knowingly omitted to act to protect her from continuing deprivations of her rights.

129.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN in acting to deprive her of her rights, acted intentionally, knowingly, willfully, and with gross disregard of her rights.

130.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at her and continuing from in or around January 11, 2012 until this day.

131.    Plaintiff alleges that as a result of the acts of defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, she suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT II**
**ABUSE OF AUTHORITY**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

132.    Plaintiff re-alleges Paragraphs 1 through 131 and incorporates them by reference as Paragraphs 1 through 131 of Count II of this complaint.

133.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA;

"JANE" KAHVECCI and "JANE" MARTIN under color of law, personally interfered with and deprived her of her constitutional rights.

134.   Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acting individually and in their official capacities as a public officials of defendant CITY under color of law, and having been fully advised that she was being deprived of her constitutional rights, either acted in a concerted, malicious intentional pattern to further violate her civil rights, or knowing such discrimination was taking place, knowingly omitted to act to protect her from continuing deprivations of her rights.

135.   Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN in acting to deprive her of her rights, acted intentionally, knowingly, willfully, and with gross disregard of her rights.

136.   Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at her and continuing from in or around January 11, 2012, until this day.

137.   Plaintiff alleges that as a result of the acts of defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, she suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT III
### VIOLATION OF THE FOURTH AMENDMENT
### ILLEGAL SEIZURE OF THE PERSON
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

138.    Plaintiff re-alleges Paragraphs 1 through 137 and incorporates them by reference as Paragraphs 1 through 137 of Count III of this complaint.

139.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, personally interfered with and deprived her of her constitutional rights.

140.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acting individually and in their official capacities as a public officials of defendant CITY under color of law, and having been fully advised that she was being deprived of her constitutional rights, either acted in a concerted, malicious intentional pattern to further violate her civil rights, or knowing such violations was taking place, knowingly omitted to act to protect her from continuing deprivations of her rights.

141.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN in acting to deprive her of her rights, acted intentionally, knowingly, willfully, and with gross disregard of her rights.

142.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acted in an outrageous and systematic pattern of

civil rights violations, oppression, bad faith and cover-up, directed at her and continuing from in or around January 11, 2012, until this day.

143.    Plaintiff alleges that as a result of the acts of defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, she suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT IV**
**VIOLATION OF THE FOURTH AMENDMENT**
**FALSE ARREST**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

144.    Plaintiff re-alleges Paragraphs 1 through 143 and incorporates them by reference as Paragraphs 1 through 143 of Count IV complaint.

145.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, personally interfered with and deprived her of her constitutional rights.

146.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acting individually and in their official capacities as a public officials of defendant CITY under color of law, and having been fully advised that she was being deprived of her constitutional rights, either acted in a concerted, malicious intentional pattern to further violate her civil rights, or knowing such violations was taking place, knowingly omitted to act to protect her from continuing deprivations of her rights.

147.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN in acting to deprive her of her rights, acted intentionally, knowingly, willfully, and with gross disregard of her rights.

148.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at her and continuing from in or around January 11, 2012, until this day.

149.    Plaintiff alleges that as a result of the acts of defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, she suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT V
## VIOLATION OF THE FOURTH AMENDMENT
## FALSE IMPRISONMENT
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

150.    Plaintiff re-alleges Paragraphs 1 through 149 and incorporates them by reference as Paragraphs 1 through 149 of Count V of this complaint.

151.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, personally interfered with and deprived her of her constitutional rights.

152.     Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acting individually and in their official capacities as a public officials of defendant CITY under color of law, and having been fully advised that she was being deprived of her constitutional rights, either acted in a concerted, malicious intentional pattern to further violate her civil rights, or knowing such violations was taking place, knowingly omitted to act to protect her from continuing deprivations of her rights.

153.     Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN in acting to deprive her of her rights, acted intentionally, knowingly, willfully, and with gross disregard of her rights.

154.     Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acted in an outrageous and systematic pattern of violations of her civil rights, oppression, bad faith and cover-up, directed at her and continuing from in or around January 11, 2012, until this day.

155.     Plaintiff alleges that as a result of the acts of defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, she suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT VI
## VIOLATION OF THE FOURTH AMENDMENT
## EXCESSIVE FORCE
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

156.    Plaintiff re-alleges Paragraphs 1 through 155 and incorporates them by reference as Paragraphs 1 through 155 of Count VI of this complaint.

157.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, personally interfered with and deprived her of her constitutional rights.

158.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acting individually and in their official capacities as a public officials of defendant CITY under color of law, and having been fully advised that she was being deprived of her civil rights, either acted in a concerted, malicious intentional pattern to further violate her civil rights, or knowing such violations was taking place, knowingly omitted to act to protect her from continuing deprivations of her rights.

159.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN in acting to deprive her of her rights, acted intentionally, knowingly, willfully, and with gross disregard of her rights.

160.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acted in an outrageous and systematic pattern of

civil rights violations, oppression, bad faith and cover-up, directed at her and continuing from in or around January 11, 2012, until this day.

161.    Plaintiff alleges that as a result of the acts of defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, she suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

### COUNT VII
### IMPROPER TRAINING
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

162.    Plaintiff re-alleges Paragraphs 1 through 161 and incorporates them by reference as Paragraphs 1 through 161 of Count VII of this complaint.

163.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, personally interfered with and deprived her of her constitutional rights.

164.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acting individually and in their official capacities as a public officials of defendant CITY under color of law, and having been fully advised that she was being deprived of her civil rights, either acted in a concerted, malicious intentional pattern to further violate his civil rights, or knowing such violations was taking place, knowingly omitted to act to protect him from continuing deprivations of her rights.

165.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE

No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA;

"JANE" KAHVECCI and "JANE" MARTIN in acting to deprive her of her rights, acted

intentionally, knowingly, willfully, and with gross disregard of her rights.

166.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE

No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA;

"JANE" KAHVECCI and "JANE" MARTIN acted in an outrageous and systematic pattern of

civil rights violations, oppression, bad faith and cover-up, directed at her and continuing from in

or around January 11, 2012, until this day.

167.    Plaintiff alleges that as a result of the acts of defendants' JOHN DOE No.: 1;

"JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO;

RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, she

suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out

of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT VIII
## IMPROPER DISCIPLINE
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

168.    Plaintiff re-alleges Paragraphs 1 through 167 and incorporates them by reference

as Paragraphs 1 through 167 of Count VIII of this complaint.

169.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE

No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA;

"JANE" KAHVECCI and "JANE" MARTIN under color of law, personally interfered with and

deprived her of her constitutional rights.

170.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE

No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA;

"JANE" KAHVECCI and "JANE" MARTIN acting individually and in their official capacities as a public officials of defendant CITY under color of law, and having been fully advised that she was being deprived of her civil rights, either acted in a concerted, malicious intentional pattern to further violate her civil rights, or knowing such violations was taking place, knowingly omitted to act to protect her from continuing deprivations of her rights.

171.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN in acting to deprive her of her rights, acted intentionally, knowingly, willfully, and with gross disregard of her rights.

172.    Plaintiff alleges that defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at her and continuing from in or around January 11, 2012, until this day.

173.    Plaintiff alleges that as a result of the acts of defendants' JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN under color of law, she suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT IX
## RACE DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

174.    Plaintiff re-alleges Paragraphs 1 through 173 and incorporates them by reference as Paragraphs 1 through 173 of Count IX of this complaint.

175.    Plaintiff alleges that New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race.

176.    Plaintiff alleges that defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN discriminated against her because of her race.

177.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN, she suffered the indignity of race discrimination and great humiliation.

178.    Plaintiff alleges that defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN'S violations caused her mental anguish, emotional distress, and loss of employment opportunities.

### COUNT X
### RACE DISCRIMINATION
### IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE § 8-107

179.    Plaintiff re-alleges Paragraphs 1 through 178 and incorporates them by reference as Paragraphs 1 through 178 of Count X of this complaint.

180.    Plaintiff alleges that New York City Administrative Code § 8-107, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race.

181.    Plaintiff alleges that defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN discriminated against her because of her race.

182.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN, she suffered the indignity of race discrimination and great humiliation.

183.    Plaintiff alleges that defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN'S violations caused her mental anguish, emotional distress, and loss of employment opportunities.

## JURY TRIAL

184.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

Wherefore, plaintiff demands compensatory and punitive damages from defendants' THE CITY OF NEW YORK; JOHN DOE No.: 1; "JANE" ROE; JOHN DOE No.: 2; JOHN DOE No.: 3; JOHN DOE No.: 4; "JOHN" GRILLO; RAFAEL FIGUEROA; "JANE" KAHVECCI and "JANE" MARTIN jointly and severally, plus any and all available statutory remedies, both legal and equitable, interests and costs.

Dated:  November 4, 2013
        New York, NY

Respectfully submitted,

By: _____
        Eric Sanders (ES0224)

**The Sanders Firm, P.C.**
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
(800) 371-4835 (Business Telephone)
(212) 537-9081 (Facsimile)

Website: http://www.thesandersfirmpc.com